[Cite as *State v. Poole*, 2018-Ohio-1905.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
|     Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2017 CA 00076 |
| RICHARD A. POOLE | |
|     Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Court of Common
                             Pleas, Case No.  2016 CR 02108


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      May 14, 2018


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JOHN D. FERRERO                           MATTHEW A. PETIT
PROSECUTING ATTORNEY                      116 Cleveland Avenue, NW
RONALD MARK CALDWELL                      808 Courtyard Square
ASSISTANT PROSECUTOR                      Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, P. J.*

{¶1}   Defendant-Appellant Richard A. Poole appeals his conviction for felony domestic violence in the Court of Common Pleas, Stark County. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2}   On November 4, 2016, officers from the Canton City Police Department were dispatched to a reported disturbance at a residence in the 1200 block of 10th Street N.W. The two responding officers, upon arrival, observed visible injuries on the person of Jennifer Z., appellant's former girlfriend and the mother of four of his children. Jennifer told the officers that appellant had physically assaulted her, as further discussed *infra.*

{¶3}   Annie Poole, appellant's mother, lived at the aforesaid residence. She told the officers that she had to physically intervene during the struggle between Jennifer and appellant.

{¶4}   Appellant had an odor of alcoholic beverage about his person, but when he came upon the officers, he was generally cooperative with them and did not try to flee. Tr. at 156-157. However, appellant made no admissions to hitting or harming Jennifer.

{¶5}   On December 12, 2016, Appellant Poole was indicted on one count of domestic violence (R.C. 2919.25(A)/(D)(4)), a felony of the third degree (based on an allegation of appellant having two or more prior domestic violence convictions). He subsequently entered a plea of not guilty.

{¶6}   Appellant filed for discovery and a bill of particulars on December 23, 2016. Counsel for appellant filed a request for a competency evaluation on January 9, 2017.

{¶7} At a hearing on March 27, 2017, appellant and the State stipulated to a competency report that had been finalized on February 23, 2017. The trial court adopted same, and appellant was thus found competent to stand trial.

{¶8} The matter proceeded to a jury trial on April 18, 2017. Although Jennifer, the victim, and Annie, appellant's mother, both testified to versions of events varying from what they had initially told the police, the jury found appellant guilty of domestic violence as charged after hearing the evidence.

{¶9} On April 25, 2017, appellant was sentenced *inter alia* to thirty months in prison.

{¶10} On May 4, 2017, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

{¶11} "I. THE APPELLANT'S CONVICTION WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶12} In his sole Assignment of Error, appellant argues his conviction for felony domestic violence was against the sufficiency and manifest weight of the evidence. We disagree.

*Sufficiency of the Evidence*

{¶13} In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. It is well-established that the State bears the burden of

establishing each and every element of a charged crime and must do so with proof beyond a reasonable doubt. *See In re L.R.*, 8th Dist. Cuyahoga No. 93356, 2010-Ohio-15, 2010 WL 27862, ¶ 11.

**{¶14}** R.C. 2919.25(A) states as follows: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

**{¶15}** The record in the case *sub judice* reveals Officer Brandon Schmidt saw Jennifer, the victim, standing outside when he arrived. He observed a facial contusion on Jennifer and "some kind of a hand marks around her neck." Tr. at 153. The officer also described her as cooperative and sober, with no indicators of substance use. *Id.* Officer Schmidt's partner, Officer Eric Lee, added that he observed fresh "bruising and swelling" around Jennifer's right eye. Tr. at 162-163. Officer Lee also testified that although Jennifer did not seek treatment at the hospital on the evening in question, she wrote out a written witness statement and a domestic violence form for the officers. She therein reported that appellant had choked her and punched her in the eye, and that Annie Poole, appellant's mother, had intervened and grabbed appellant. Other than appellant and Annie, Jennifer did not report the involvement of any other adult in the incident at that time.

**{¶16}** The officers also testified to the presence of Annie Poole, who was inside the residence. Although Officer Lee did not have direct interaction with Annie at that time, Officer Schmidt also described her as cooperative and sober. Tr. at 155, 165.

**{¶17}** Furthermore, the jury viewed footage from Officer Schmidt's POV on-person camera, showing Jennifer stating to the officers at the scene that appellant had punched and choked her, and also that Annie, appellant's mother, had tried to break up the

struggle. The footage additionally showed Annie telling the officers that she had to pull her son off of Jennifer.

**{¶18}** The jurors also heard a recording of Jennifer's 911 call made on the night in question, during which appellant is identified as the person engaging in the assault.

**{¶19}** In the case *sub judice*, there appears no dispute that Jennifer was a family or household member under the statute or that she was physically harmed. As summarized above, upon review of the record and transcript in a light most favorable to the prosecution, we find that reasonable jurors could have found appellant guilty beyond a reasonable doubt of the offense of domestic violence as charged.

*Manifest Weight of the Evidence*

**{¶20}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See, also*, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175, 485 N.E.2d 717.

**{¶21}** Even though a manifest weight analysis may involve an appellate court's consideration of credibility (*see State v. Sanders*, 76 N.E.3d 468, 2016–Ohio–7204 (5th Dist.), ¶ 38), the weight to be given to the evidence and the credibility of the witnesses are primarily issues for the trier of fact (*see, e.g., State v. Jamison* (1990), 49 Ohio St.3d

182, 552 N.E.2d 180). Furthermore, this Court has previously expressed its awareness "of the troubling phenomenon of recantation of testimony by persons involved in domestic violence situations." *See State v. Manzell*, 5th Dist. Stark No. 2006CA00258, 2007-Ohio-4076, ¶ 22.

**{¶22}** During the trial, both Jennifer and Annie were declared to be court's witnesses. *See* Tr. at 177, 215. Although never mentioned in her verbal and written reports to the police, Jennifer testified at trial that on the night in question, she became upset that appellant had left the house and returned in the company of another female. Jennifer did not provide a name, but she claimed this person was a white female with curly hair, in her late twenties or early thirties, and she disparagingly described her as "fat and ugly." Tr. at 177-178. Jennifer told the jury that " *** at one point I had got up and walked like towards him, and me and her started like tussling around and he tried to break us up." Tr. at 175-176. She stated that the unnamed female had hit her, "but at the time I thought it was [appellant] that hit me." Tr. at 176.

**{¶23}** Jennifer also testified that she had been drinking "quite a lot" starting in the afternoon on November 4, 2016, consuming beer and liquor. Tr. at 175. When shown portions of the POV video and asked why she wasn't slurring her words at the scene, Jennifer replied: "I guess I am a good drunk." Tr. at 186.

**{¶24}** Jennifer also denied on the witness stand having any contact with appellant after the incident in question. The State nonetheless presented four recorded telephone jail calls between appellant and Jennifer. She attempted to explain these calls by asserting it was her teenage daughter, and not her, on the phone recordings, even though a frequent subject of the conversations was the assault incident. Jennifer had no

explanation for the similarities between a version of events appellant appeared to be suggesting in one of the calls and her trial testimony. *See* Tr. at 187, 189-194; State's Exhibits 8 & 9.

**{¶25}** Annie Poole's trial testimony also differed from her statements to police on November 4, 2016. Annie testified that appellant, her son, had come to the house with a woman she didn't know. Annie stated she could not describe this woman because she hadn't paid attention, other than recalling she may have been white. Annie made no mention of intervening in the argument that ensued, stating that she instead went upstairs to the bathroom. She told the jury she didn't remember telling the police that she had to pull her son off of Jennifer, as she was very intoxicated at the time. *See* Tr. at 212-220.

**{¶26}** Upon review, we find the jury, in implicitly rejecting the recantation testimony by Jennifer and Annie on the witness stand vis-à-vis the officers' recollections and the audio/video evidence, did not clearly lose its way and create a manifest miscarriage of justice requiring that appellant's conviction for domestic violence be reversed and a new trial ordered.

{¶27}  Appellant's sole Assignment of Error is therefore overruled.

{¶28}  For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.


By: Wise, P. J.

Gwin, J., and

Baldwin, J., concur.


JWW/d 0424